Our second argument of the morning is in Appeals 2528.78 and 2528.79, the City of Chicago v. Falkner and others. Debtors, Mr. Collins, nice to see you whenever you're ready. May it please the Court, the City's objection to the confirmation of Debtors Chapter 13 plans triggered a requirement under the Code that debtors commit all of their projected disposable income to payments to unsecured creditors during their plan's commitment period. The plans do not satisfy this requirement because they instead commit a large portion of disposable income to payments to debtors' bankruptcy attorneys, but the bankruptcy attorneys are not creditors at all, let alone unsecured creditors. This morning I will explain that these plans should not have been confirmed for this reason alone. Alternatively, even on the theory that the bankruptcy attorneys are creditors, the plans still should not have been confirmed because the attorneys did not submit a proof of claim that is required of all creditors. For either of these reasons, the confirmation of the plans should be reversed, but I'd like to start with the requirement that disposable income go to unsecured creditors. That requirement comes from Section 1325G1, which gives a debtor two options in the event an unsecured creditor objects to confirmation of the plan. A, the plan may provide for a full payment to unsecured creditors, or B, the plan may commit all of the debtors' projected disposable income to payments to unsecured creditors during the plan's commitment period. And if neither of these requirements is satisfied, then the plan may not be confirmed. And here it is undisputed that the plans do not provide for full payment to unsecured creditors. So in order for the plans to be confirmable, they had to commit all of debtors' projected disposable income to payments to unsecured creditors during the commitment period. And the plans do not do this because they instead diverge a large portion of disposable income to payments to debtors' bankruptcy attorneys. Mr. Collins, has any circuit in the country agreed with your position? I'm not aware of any circuit that's taken up the precise issue that's at issue here. Circuits have addressed it. Not in the sense of Chicago parking tickets, for sure, right? But in the broader sense. I mean, Chapter 13 bankruptcies have been around a long time. Counsel being involved in Chapter 13 bankruptcies has been a mainstay forever. Unsecured creditors existing in Chapter 13s have been for—so is there any circuit around the country that even on the fringes would suggest you're right? I think so, Your Honor. We cite those cases in our brief for principles such as the principle that—so, for example, a Chapter 13 bankruptcy attorney's fees are administrative expenses, and administrative expenses— Sure, but as to the construction of 1325B-1, any circuit—I mean, what's the—I don't remember the acronym—BABCA or BABA or something? I've heard it pronounced BAP-CAPA, but I'm not sure. That statute's been around for a while now, right? 20, 25 years? I think it was passed in 2005. Yeah. But I'm not aware of any unsecured creditor that has presented a challenge to plan confirmation in the nature of the city's challenge in these cases. Mr. Collins, can I ask about that? Why not? I mean, this is kind of a curiosity question for me. It seems to me like other unsecured creditors should be in the same position that the city of Chicago is in right now and read the statutory text and pursue it up on appeal. Why is this only coming up now, like 20 some odd years after BAP-CAPA? I don't know, Your Honor. It would be speculating. It may be that in a typical case, an unsecured claim is too small for it to be worthwhile of a creditor to pursue in litigation. But for the city, this is a recurring issue, and so obviously we present the issue in this case. Now, the bankruptcy court confirmed these plans on the belief that the bankruptcy attorneys were both administrative expense holders and creditors at the same time. But that was an erroneous determination because a person cannot be an administrative expense holder and a creditor. Yeah, that seems odd to me. It really does because there's part of the legal work, well, it's represented in the So when you look at the way the code defines the term creditor, wouldn't you say, well, at least as to that portion of the work, the attorney is a creditor? And post-petition, not a creditor. It holds some other claim, maybe a claim for an administrative expense. So a couple of points. I don't know why there's such a fight about this. It just seems obvious. The attorney's fees arise post-petition in the sense that the fees are not approved by the bankruptcy court until after the petition is filed. What about all the pre-petition work? Don't they just come in like a creditor and they want to stand right next to the city of Chicago and say, yeah, we did legal work pre-petition. We're a creditor. We're unsecured too, just like the city for those parking tickets. It's our position that the fees that are owed for that pre-petition work essentially become post-petition expenses by virtue of having been categorized as administrative expenses upon approval by the bankruptcy court. And beyond that, the code creates – Are you saying that? I know that's the position in your brief. Your brief's good. You're clear on that. Okay? But it almost seems like you're saying that because you'd say, well, we really don't want them at this party. We don't want them standing next to us as an unsecured creditor because, you know, by goodness, that means we might have to share with them if they're an unsecured creditor. Sure. If any unsecured creditor – But that doesn't – I mean, it's a statutory case. Yes. So I understand why your preference might be to be the only one, you know, there to – but, I mean, don't we have to interpret the code to figure out are they a creditor? Yes, certainly. And so I want to emphasize a couple of other ways that a person cannot be both a creditor and an administrative expense holder. And just to be clear, the code makes clear that Chapter 13 bankruptcy attorney's fees are administrative expenses. So the code is clear that that's the bucket that the attorney's fees fall into. But beyond that, the code creates a pretty clear dichotomy between administrative expenses on the one hand and creditor's claims on the other hand. So, for example, administrative expenses generally arise post-petition, whereas creditor's claims generally arise pre-petition. And beyond that, the code sets forth mandatory and distinct procedures governing the payment of administrative expenses on the one hand and creditor's claims on the other hand. So based on those differences, a person can't be both an administrative expense holder and a creditor at the same time. And since the code is clear which side of that line the attorney's fees fall on, in that they are administrative expenses, it necessarily follows that the bankruptcy attorneys are not creditors and they are therefore ineligible for payment. Mr. Collins, let's say you're going to lose. There's a couple ways that the court might interpret. Imagine we're interpreting the statute not in your favor, but there are a couple different options. And I'm wondering if your client has a view on which is better. Let's call it option one. We could find that administrative expenses like attorney's fees and the trustee's fees should be netted out as priority expenses before projected disposable income is fully calculated, so kind of netted out on the front end. And option two would be doing like the court below did and saying debtor attorneys are unsecured creditors for the purposes of 1325B1B. Does the city have a view on which of those options makes more sense or is preferable from the perspective of an unsecured creditor like you? Well, as I stand here today, accepting that those are the only two options. Just on hypothesis, yes. Yeah, I can't think of any grounds to prefer one or the other. They're both equally bad in my view. But addressing the first sort of prong of your hypothetical, it's our position that it wouldn't be proper to treat the attorney's fees as an expense that can be deducted in the calculation of disposable income. For below median debtors such as these, the 2005 amendment to the code did not change how disposable income is calculated. Do you agree that they should be deducted probably for above median debtors, though, who are using the means test under Section 707? Probably. Yeah, certainly there are cases that so hold. But even if the court were to sort of import this part of the means test into below median debtors such as these, then even under the means test, I believe only 160th of the total amount owed on priority claims can be deducted per month. And even under that calculation, applying that kind of calculation here would still be plenty of money left over to pay unsecured creditors out of disposable income. Is that because in practice in these below median debtor claims, they're not dividing out the amount of attorney's fees sort of month by month over the entire course of the plan, but rather are paying the attorney's fees in lump sums up front? I'm not sure the typical case, Your Honor. I know that these plans call for some payments on secured claims, and I believe what's left over is split among the attorneys and the trustee. And I believe that's how the plan payments proceed with each of the installments providing for payment to all those entities. I see I'm eating up and starting to get into my rebuttal time. I'd like to briefly address our alternative ground for reversal, which is that on the theory that the bankruptcy attorneys are creditors, the plans still should not have been confirmed because the attorneys did not submit a proof of claim. Bankruptcy Rule 3002A in this court's decision in Pagin made clear that in order for any creditor to participate in plan distributions, the creditor has to submit a proof of claim. And the bankruptcy court here confirmed these plans despite the failure of the attorneys to submit a proof of claim, and reversal would be proper for that reason. Mr. Collins, before you sit down, you're going to get rebuttal time. Don't worry about it. Do you know how secured creditors, not unsecured, secured, how are secured creditors being treated under 1325B today? I believe in a typical case, at least, the types of secured claims that a debtor would have would be either for a house or a vehicle. So would they be netted as part of that determination of what a, what's the jargon here, a statutory reasonably necessary for maintenance and support of the debtor? Yes, correct. So a car payment, a house payment, things like that? Yes. They kind of go to shelter, just living, things like that? Exactly. The kinds of things a person needs to live, food, shelter, transportation, things like that.  All right. Thank you. Mr. Miller. Good morning. May it please the Court, Michael Miller on behalf of the appellees. Kind of getting back to what everyone was talking about here, we believe that that's an artificial conflict here today in the case on whether the attorneys have to be a creditor or an administrative claim because 1325B, which is the subject of this appeal, is just about the amount of disposable income that flows to unsecured creditors. And as your honors have pointed out, we do agree that a lot of things are netted out before you get the disposable income, and that's by statute. For example, under 1326B1, attorney fees must be paid before or at the time of other creditors. Right under 1326B1 is 1326B2, and that's the Chapter 13 trustee. Those are mandatory payments that have to be made by the code. Before you even get to disposable income, you have to pay those things. But those aren't – I don't see a place to account those things in the projected disposable income calculation for below median debtors. Right? I see what you're saying when we're talking about above median debtors because the statutory means test does include a deduction for priority claims, which could include attorney's fees. So you would net it out at the front end. But I don't see how we fit that into the definition of projected disposable income for below median debtors. Well, the Supreme Court in the Lanning case says that projectable disposable income are expenses that are virtual or certain at the time of filing. So attorney fees are certainly virtual or certain. And that's one of the other issues with the city's reading too is they're conflating terminology from 1325B, which is disposable income versus projectable disposable income. So is your point that you can consider Chapter 13 legal fees to be amounts reasonably necessary to be expended for maintenance or support of the debtor? We feel like... Or as your point, the bankruptcy court, to my eye, seemed to be thinking, why does anybody care about this? What difference does any of it make? What approach do you recommend that we take on that? Well, I believe that that's just a solo lens that they're looking at. You don't have to fall under 1325B-2 because that's not in the statute at issue. The statute at issue says projected disposable income, and 1325B-2 uses disposable income, and those are two different things. So that's one of the problems is the city is conflating them. However, I believe that if you have to reach a definition, I think attorney fees could be as reasonably necessary because debtors do need attorneys to get through their cases and pay their creditors, and the code mandates under 1326. And I think that's one of the biggest issues is the city has no way to get around 1326B-1 and 2. Those are mandatory provisions. FAPCFA in 2005 didn't amend those. You know, the city is trying to say that three words added to a statute cause these sweeping changes that would not get attorney fees to get paid anymore. And the other problem with the city is 1326B-2 is trustee fees. So under the city's view, an attorney fee can't be paid because they're not an unsecured creditor and they don't file a proof of claim. Well, the same goes for Chapter 13 trustees. They don't either. So the city's reading would lead to an absurd result where trustees would no longer be paid, and they're self-funded, and they need the funds from these cases to operate. And certainly if Congress wanted to make these kind of sweeping changes, they would have done a little bit more than just added three words because Congress doesn't hide elephants in mouse holes. What do you think was Congress trying to do with adding these three words? We believe it was a technical change because prior to FAPCFA it said that the creditors were paid under the plan and they just wanted to make a technical change, and all they did was they changed it to say to unsecured creditors just to make sure the netted out income that's left over goes to unsecured creditors. So you're kind of reading unsecured creditors there to be a catch-all for anybody that's not already netted out from projected disposable income. That are just unsecured creditors, correct. Is your point, though, that as a matter of custom and practice, absent a clear statement from Congress or however you want to formulate that, there's just no indication that Congress intended attorneys' fees to be treated any different than they historically have been treated? Right. As administrative expenses that kind of come off the top. Right, and that's what the Supreme Court said in Lanning is that unless there's clear legislative intent, you can't erode the past practice. And past practice clearly paid attorney fees and trustee fees netted out prior to unsecured creditors. The other thing, too, is if Congress really wanted to stop paying attorney fees, they could have put some nonwithstanding language in 1325b1b to override 1326. They didn't do that. And there's certainly some very substantial changes that were done under BAPSIFA. For example, 707b had almost 2,500 words that were added, and that's clearly when Congress wants to make a change, they know how to do it. The other problem is the city said that the other issue we have in this case is we have to remember that 1325b1b treats over-median and under-median debtors the same. There's no difference. However, the city, their argument is this. For an under-median debtor, it's a three-year applicable commitment period. Their argument is attorneys can't get paid until month 37. The problem is over-median debtors are a 60-month applicable commitment period. So that means under the code 1322d says a case can't go more than 60 months. So under the city's general reading, an over-median debtor would not be able to pay their attorney fees because it would be unfeasible. And then in the city's reply brief, and actually you heard them today, they kind of say, well, yeah, they can be deducted now. So they're kind of, okay, so if they can be deducted, then your general reading doesn't work. The problem is the city misstates how the means test works for over-median debtors. The way they've presented it is they've made it where it's 160th as a set payment. That's not how the means test works. For over-median debtors, it's just a deduction to take away from what's left of the unsecured creditors. It's not a set payment. So in an over-median debtor, the attorney fee is $5,500. In that case, the attorney fees start getting paid before or at the same time as other creditors under 1326b2. They don't just get $90, they just get paid immediately. So the city is misstating. It's an administrative expense? Yeah, it's administrative. So they're misstating how the over-median cases work. Sorry, just to make sure. The attorney fee does not get divided out over the life of the plan? Just as a deduction, as a calculation, not as a set payment. So we don't get like, let's say the payment is $1,000 per month in the plan. We're not getting $90 for an over-median case, but they're saying the means test does a formula where it says after all these expenses, you've got this left over to pay your creditors. Well, and that's really what the real question is. The real question that all the courts have addressed on this, which I've cited in my briefs such as cases as Dumas and Embers, is it a deduction or not? That's really how the courts have looked at this. So do you do, what's the jargon, above-median? Do you do above-median cases? Both, yes. Okay, so above, you're saying, what, today's rate's $5,500? Yeah, that's a flat rate in this district so we don't have to do billing. Okay, and you just get it? You get the $5,500? It doesn't come in drips? No, it gets paid immediately. I mean, it may have to share with, for example, in a plan, secured creditors get what's called adequate protection. So they get paid concurrently, right? But they don't just get $90. Trustee gets paid, all that stuff. What's that? The trustee gets paid? Trustee gets paid right off the top. Okay, so the point you must be making is that there is some netting because you still have to figure out, well, what's left? Right, the residual. For the unsecured creditors. Which would be the residual, correct. And you'd say this case does not evolve above median, it's below median, but you're effectively doing the same thing. You're just not doing it pursuant to the statutory prescriptions that Congress put in place for above median. Right. The other problem is with the city's argument, they're now conceding that attorney fees can be paid in over-median cases. So they're saying that under-median debtors can't pay their attorneys, but over-medians can, and that just seems to be an irreconcilable conflict. 1325B1B treats both equally. So that's another problem with the city's reading. I have a question, and I'm sorry if this is a silly question, but why in the statute, help me understand why you're getting 100%, like the 5,500 up front, and not divide it out over month to month over the life of the plan, whether that's 60 months for an over-median. Sure, so the way the courts have looked at this, and there's a really good explanation about how the means test works in the Dumas case, is the means test is strictly a calculation test. So what it does is you fill it out, and if you're over-median because of your income, you have to fill out a whole bunch of expenses, and one of those expenses can be attorney fees, the other one could be like a car payment you're paying in the plan, and then what happens is it spits out a number, and that number is disposable monthly income, and that's whatever is left over is to pay your unsecured creditors. So it could be zero, it could be $100, it could be $200, and let's say it's $100. You take the $100 and you times it by 60, and whatever that number is, you have to pay that to your unsecured creditors under the over-median test. Yeah. So that's all it is, it's just a deduction, and that's why I'm really strong on this is what the real issue is, and I believe the city is mis-framing it, and they're causing an artificial conflict. The real issue is whether attorney fees can be deducted or not, and frankly, we don't have an opinion on that. We're just appealing. We're representing the part about attorneys just not getting paid, and that also would— So what you're saying there is even though you get the— I don't know if you get a check or something. From the trustee. Somehow you get $5,500. You get the $5,500, and then you're saying, but we don't get $5,500 and then everything ends. There still has to be a calculation, or the court still has to calculate what the monthly disposable income is that's available to unsecureds.  And that's why the $5,500— that's why you figure out what portion of that $5,500 would have monthly come out. Well, no, you could just take it out as just like $5,500 divided by 60 months, and then that would take away from the pot. Like there's a pot to unsecured creditors, right. Your point is that you just have to make sure when you go to the pot that you take account of the fact that the trustee's been paid, the attorneys have been paid. Don't forget that because that money's not there. It's been paid out. Right, and secured in priority debts.  Yeah, general unsecureds, they get paid last. But like I said, really we don't see how the city gets around 1326B1. That's a mandatory provision. It says attorney fees and trustee fees under B2 must be paid with each payment before or at the same time as other creditors. Under the city's reading, they're saying, well, hey, 1325 is a confirmation provision, and if you don't meet that, then you can't get the 1326. But that's not true because under 1325A1, a plan must comply with all applicable provisions, and 1326B1 is an applicable provision. So they work together. 1326B1, if you don't satisfy that, you can never confirm a plan. So that's the problem with the city's argument is they're going to try to say that there is no conflict, but there clearly is a conflict. And 1326B1 was not amended by BAPSIPA. They would have amended it if they wanted to stop paying attorneys. As your Honor said, attorneys have been paid hundreds of years. Your broader point is you have to read it all together and try to make sense out of it. Holistically, yes. If we had one and only one provision, 1325B1, the city's got a pretty good case. But what you're saying is the bankruptcy code contains a lot more provisions than just 1325B1. Yeah, it does. And another one is 1322B4. That one says the debtor at his or her discretion can pay unsecured creditors concurrently if they want to. The city is basically nullifying that. They're saying, nope, we've got to get paid no matter what. They're eviscerating the discretionary under 1322B4, so you've got a couple of statutes that are being read out of the code. Mr. Miller, just to make sure I understand, the way the bankruptcy court analyzed this was to find that for purposes of 1325B1B, unsecured creditors could include debtors' attorneys. Do you agree that that interpretation preserves the functioning of the system? Yes. Yes. Yes, we do. We do. We don't believe the court had to get into that. Yeah, I know that. But what the court did say was there was a conflict. The city's reading conflicts with 1326B1, so that was enough to really win below. But they did go into what I call the city's trap of are you a creditor or you're not a creditor. And I think I agree with Your Honor. You can be a creditor and you can be an administrative claim because, like you said, pre-petition, they sign a contract. We do a lot of work. And we're at least a contingent unsecured claim at that point. And then the case gets filed. And then once the court approves the fee application, under 503, we are an administrative claim that gets paid. So you're kind of... I mean, I'm not going to use the right jargon. I don't practice in this area. You all do. Okay, but the... Yeah, it's okay. Call us an unsecured creditor if you'd like to call us an unsecured creditor. But at some point in time, we become an administrative expense holder with a priority for payment. Is that what you're saying? Yes. Yeah, and so that's why you're kind of indifferent to whether for a temporary period of time, you're called an unsecured creditor because you're going to say, I know where this is going. At the end of the day, we're going to be called an administrative expense claim. Right. And if you want to take, like, just a really large thousand feet view from the code, 1325 is just about what you got to do to confirm a case. It's not about when you get paid or how you get paid. If you look at 1326, the title of the section is payments. So, you know, just from a larger scale perspective, it seems very clear to me that this is not when creditors get paid, like attorney fees. It's how much they get paid. And that's what the disposable income has been for years. It's what you can pay your unsecured creditors and what you can afford. Do you know any... I want to ask the same question we asked Mr. Collins. Do you know any court in the country that has put Chapter 13 counsel behind unsecured creditors? No, I do not. And there's never been... And I think we stated in our brief several times, the city has not stated one case, pre-BAPSIPA or post-BAPSIPA. They did try to state a case called Vining. In Vining, what they did was they started paying unsecured creditors concurrently, but they didn't grapple with 1326b2. They didn't say attorney fees couldn't get paid. However, we think Vining is wrong because it eviscerates 1322b4, which says that's the debtor's discretion. But other than that, the city has not one single case. And for those foregoing reasons, we ask the court to affirm this bankruptcy court. Thank you. Any more questions? I'm sorry. No, thank you, Mr. Miller. Thank you. Okay, Mr. Collins, you've got some time left. Just a couple of points. I'd like to start with Section 1326b1. It's the city's position that this provision, which generally requires that administrative expenses be paid at or before the time of payments to creditors, the function of that is to limit the discretion of the trustee in the sequencing of payments in cases where the trustee has discretion over such sequencing. So, for example, if there is no objection by an unsecured creditor or by the trustee, then Section 1325b1 would not come into play, and the code would not require, in that instance, that projected disposable income go to unsecured creditors during the commitment period. Moreover, Section 1326c provides that the trustee must make payments to creditors as provided by the plan. So when a plan conforms with Section 1325b1b, by making all disposable income go to unsecured creditors during the commitment period, Section 1326c would require the trustee to make payments to unsecured creditors in conformance with the plan. Mr. Miller also addressed Section 1322b4, which is about how a plan may provide for payment to secured and unsecured creditors at the same time. Our position is not render this provision superfluous. For example, as we discussed before, secured payments on things like houses and vehicles are reasonably necessary for the debtor's maintenance and support, and so those payments may be made at the same time as payments to unsecured creditors are under our interpretation of the code. Moreover, it's just not unusual for attorneys to have to wait some time to receive payment on the work that they do in a case. That's the norm in contingency fee cases, and our position in this case is not inconsistent with that, and so the court should not be concerned about the viability of the Chapter 13 system under our position. If the court has no further questions, I'll be asked that the judgments confirming these plans be reversed. Thank you. Okay. Mr. Collins, thank you. Thank you to your colleagues as well. Mr. Miller, thank you. We'll take these appeals under advisement. Thank you.